UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
UNITED STATES OF AMERICA,

   -against-

**MEMORANDUM AND ORDER**
Case No. 16-CR-346 (S-1) (FB)

FRANK SMITH,

            Defendant.
-------------------------------------------------x

**BLOCK, Senior District Judge:**

Frank Smith was convicted of one count of racketeering, two counts of murder in aid of racketeering, and two counts of causing death through use of a firearm. Through counsel, he moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and, in the alternative, a new trial pursuant to Federal Rule of Criminal Procedure 33. For the following reasons, the motions are denied.[1]

---

[1] In addition, Smith has filed a pro se motion for a new trial based on a claimed Fourth Amendment violation based on the government's use of subpoenas to obtain cell-site location information ("CSLI"). In *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the Supreme Court held that obtaining such information is a search requiring a warrant. *See id.* at 2217 ("The location information obtained from Carpenter's wireless carriers was the product of a search."). However, in *United States v. Zodhiates*, 901 F.3d 137 (2d Cir. 2018), the Second Circuit held that *Carpenter* did not require suppression of CSLI obtained prior to 2018 under the "good faith exception" to the exclusionary rule, because under pre-*Carpenter* precedent "a warrant was not required for the cell records." *Id.* at 144; *see also United States v. Chambers*, 751 F. App'x 44, 46 (2d Cir. 2018) (declining to suppress cell phone records obtained by court order). Smith was tried before *Carpenter* was decided; the subpoenas at issue were necessarily issued much earlier.

1

## I. Motion for Judgment of Acquittal

Smith was convicted based on his association with a gang known as Rival Impact. According to the government, Rival Impact distributed narcotics in Coney Island, and engaged in various acts of violence to protect its territory and to intimidate rival gangs.

Smith does not seriously dispute that the evidence was sufficient to show both that Rival Impact was a racketeering enterprise and that Smith was involved in its activities. Rather, his argument for acquittal is one of timing.

In order to satisfy the statute of limitations, the government had to prove that at least one racketeering act occurred after June 22, 2011. Smith first argues that the government did not meet its burden because the evidence was insufficient to show that Rival Impact continued as a criminal enterprise after that date. The Court disagrees. Two cooperating witness, Gerald Salley and Nabiu Mansaray, testified as to the continuation of Rival Impact's drug dealing operation, as well as its ongoing turf war with another gang, "Thirty-O." Salley's knowledge of Rival Impact's business effectively ended with his arrest in August 2011, while Mansaray's ended when he moved to Maryland "sometime in August or September of 2011." Trial Tr. 1333. The testimony of both witnesses, therefore, could satisfy the government's burden of proof on the statute of limitations. *See United States v. Rea*, 958 F.2d 1206, 1221-22 (2d Cir. 1992) ("Matters of the choice between competing inferences,

the credibility of the witnesses, and the weight of the evidence are within the province of the jury, and we are not entitled to second-guess the jury's assessments.").

Smith next argues that there was insufficient evidence of his involvement with Rival Impact beyond June 22, 2011. Of the eight racketeering acts alleged in the indictment, three fell within the relevant timeframe: Racketeering Act One alleged a heroin distribution conspiracy between January 2000 and January 2014; Racketeering Act Four alleged possession of cocaine base and heroin with intent to distribute on August 20, 2011; and Racketeering Act Five alleged possession of heroin with intent to distribute on September 5, 2011. The jury found each of those predicate acts proven.

Smith does not even mention Racketeering Act One; that alone is sufficient reason to deny the motion. In any event, there was indisputably sufficient evidence that Smith engaged in the drug transactions alleged in Racketeering Acts Four and Five. That, coupled with the evidence that Rival Impact was an ongoing enterprise, was sufficient for the jury to draw a reasonable inference that the transactions were the result of his membership in the organization.

## II. Motion for New Trial

Smith's moves for a new trial on three grounds.

**A.** *Brady*

First, Smith argues that the government failed to turn over information related to co-conspirator Michael Liburd's membership in the "West End Enterprise," another criminal organization. He argues that the information would have supported his argument that, by June 2011, Rival Impact had ceased operations and its members had begun to pursue other criminal activities.

The Court agrees—as it did at trial—that Liburd's membership in another gang was arguably relevant to Smith's argument. However, that does not make the evidence "exculpatory" within in the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963); membership in one gang does not necessarily preclude membership in another, particularly in light of the evidence that the two were related.

In any event, the parties stipulated, at the Court's suggestion, to Liburd's membership in the West End Enterprise; the Court reasoned that additional evidence about the association would cause jury confusion and excluded it under Federal Rule of Evidence 403. Smith has not pointed to any other specific evidence in the government's possession that would have tended to show that Rival Impact had ceased operations. Thus, the Court adheres to its prior holding that the stipulation was sufficient to allow Smith to present his theory of defense.

4

## B. Post-Arrest Interview

Following his arrest, Smith's co-defendant Mansaray was interviewed on video by law enforcement officers. Although the Court allowed Smith's counsel to introduce portions of the video to impeach Mansaray during his cross-examination, they did not do so. Instead, they sought to introduce the entire one-hour video for its truth. Smith argues that the Court's denial of that request was error.

Smith concedes that the video was hearsay but argues that it could have been admitted under the "residual" exception of Federal Rule of Evidence 807. This exception was not raised at trial. Since the rule explicitly requires prior notice, *see* Fed. R. Evid. 807(b), its belated invocation is sufficient reason to deny the motion.

Even if Smith had timely sought admission under Rule 807, the Court would have denied the request. The rule requires, *inter alia*, "sufficient guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). Nothing about Mansaray's recorded statement provides such guarantees. As the Second Circuit has recognized in a different context, "[i]t is not uncommon for a suspect, upon interrogation by police, to first claim in a self-serving manner that he did not commit a crime, only thereafter to confess that he did." *United States v. Williams*, 930 F.3d 44, 61 (2d Cir. 2019) (discussing rule of completeness).

In addition, the rule requires that the evidence be "more probative on the point for which it is offered than any other evidence that the proponent can obtain

5

through reasonable efforts." Fed. R. Evid. 807(a)(2). Mansaray testified at trial and, therefore, was subject not only to cross-examination, but to possible perjury charges and revocation of his cooperation agreement. The Court adheres to its holding that the video was admissible for impeachment, but that the in-person testimony was more probative of the truth of the matters at issue. *Cf. Parsons v. Honeywell, Inc.*, 929 F.2d 901, 908 (2d Cir. 1991) ("Brongo apparently is able to testify in person. We agree with Parsons that the evidence should be used only to refresh Brongo's recollection.").

## C. Supplemental Jury Instruction

The murders of Terrance Serrano and Rashawn Washington formed the basis of Racketeering Acts Seven and Eight of Count One (Racketeering) and Counts Two and Three (Murders in Aid of Racketeering). The jury convicted Smith on Counts Two and Three but was unable to reach a unanimous verdict as to Racketeering Acts Seven and Eight.

Smith concedes that the inconsistency itself is not fatal to the verdict. He argues, however, that it demonstrates a flaw in the Court's jury instructions. The Court disagrees.

During its deliberations, the jury asked for clarification as to the difference, if any, between Racketeering Acts Seven and Eight and Counts Two and Three. The Court responded that "in order to find the defendant guilty of murder in aid of

6

racketeering . . . there's an additional element that you must find by of course the standard of proof, proof beyond a reasonable doubt." Trial Tr. at 2289. It then defined that element by referring back to its initial instructions:

> If you find that the defendant was motivated at least in part by a desire to maintain or increase his position in the enterprise, you should find that this element has been proven.
>
> If, on the other hand, you find that the defendant was not motivated at all by a desire to maintain or increase his position in the enterprise, then you should find this element has not been proven and must, therefore, find the defendant not guilty of that crime.
>
> Now, in deciding what the defendant's purpose was you must determine what he had in mind.

Trial Tr. 2290.

The jury returned with another question: "[I]f we have agreed to at least the minimum requirement of two acts for count one, do we need unanimous agreement for all eight acts?" Trial Tr. 2298. The Court correctly answered no.

Smith argues that the Court's supplemental instruction was erroneous. Specifically, he argues that it suggested a lower burden of proof on Counts Two and Three than on Racketeering Acts Seven and Eight.

The Court's supplemental instruction merely repeated verbatim the initial instruction, which Smith did not challenge. In any event, both the initial and supplemental instructions correctly informed the jury that Smith's motive or purpose was an element of murder in aid of racketeering. Nothing in the

7

instruction suggested that Smith had to disprove a particular motive, particularly in light of the Court's repeated instructions that the burden is always on the government to prove the elements of a crime beyond a reasonable doubt. Simply asking a jury to determine what a defendant "had in mind" is a commonplace of criminal jury charges. *See Am. Commc'ns Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 411 (1950) ("[C]ourts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.").

### III. Conclusion

For the foregoing reasons, Smith's motions are denied.

**SO ORDERED**.

    /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 25, 2021