UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
UNITED STATES OF AMERICA

-against-

FRANK SMITH,

Defendant.
-----------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 16-CR-346 (FB)

*Appearances:*
*For the United States:*
COLIN M. CERIELLO
Assistant United States Attorney
Eastern District of New York
Brooklyn, New York 11201

*For the Defendant:*
FRANK SMITH, *pro se*
06828-424
USP LEWISBURG
Post Office Box 1000
Lewisburg, Pennsylvania 17837

**BLOCK, Senior District Judge:**

Defendant Frank Smith, proceeding *pro se*, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), and for the appointment of counsel to pursue that motion. Having found no issues of even arguable merit, the Court declines to appoint counsel. *See United States v. Romano*, 707 F. Supp. 3d 233, 234 (E.D.N.Y. 2023) ("[T]he Court has the discretion to appoint counsel when the defendant shows the motion may have merit."). However, since Smith is one of many seeking early termination of a mandatory life sentence, the Court takes the opportunity to stress that, even though Smith's life sentence was mandatory when imposed, the Court could reduce that sentence if Smith were an appropriate

candidate for compassionate release, and to explain how it decides whether to do so in a particular case.

**I**

In 2018, Smith was convicted of racketeering in connection with his leadership of "Rival Impact," a criminal enterprise that controlled drug distribution at a housing project in Coney Island. In addition, he was convicted of two murders in furtherance of the enterprise, and of the use of a firearm in connection with those murders. The Court was required by statute to sentence Smith to life imprisonment for the murders, plus an additional 20 years' imprisonment for the firearms convictions.

Having served a little over ten years of his sentence, Smith, now 42, argues that numerous factors warrant a reduced sentence. He cites his age at the time of his crimes, family circumstances, health issues, rehabilitation efforts, and conditions of confinement, as well as subsequent changes in the law.

**II**

At this point, the criteria for compassionate release are well-established: § 3582(c)(1)(A) requires a district court to "determine [whether] three independent, necessary requirements have been satisfied: (1) the defendant has exhausted administrative remedies; (2) an extraordinary and compelling reason exists for sentence reduction; and (3) the § 3553(a) factors warrant reduction." *United States*

*v. Tavarez*, 747 F. Supp. 3d 557, 559 (E.D.N.Y. 2024). The statute further provides that any reduction must be "consistent with applicable policy statements issued by the [United States] Sentencing Commission." *Id.* In November 2023, the Sentencing Commission finally updated its policy statement regarding compassionate release. The amended policy statement, U.S.S.G. §1B1.13, now lists five categories of "extraordinary and compelling reasons" for compassionate release, plus a catchall for "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the [enumerated] reasons . . . are similar in gravity to those [reasons]." U.S.S.G. §1B1.13(b)(5). Broadly defined, the listed reasons relate to the defendant's (1) medical circumstances, (2) age, (3) family circumstances, and (4) status as a victim of abuse. Subsection (6)—so numbered because the catchall provision is subsection (5)—deals with non-retroactive changes in the law that make the defendant's sentence, in hindsight, "unusually long."

**A. Compassionate Release and Mandatory Minimums**

In *Rutherford v. United States*, 146 S. Ct. 1320 (2026), the Supreme Court invalidated subsection (6) as beyond the Sentencing Commission's delegated authority to define "extraordinary and compelling reasons" for compassionate release. It reasoned that "nonretroactive amendments to criminal penalties are the norm" (and therefore not "extraordinary'), *id.* at 1330, and that "treating [a non-

retroactive amendment] as a compelling reason for reducing a sentence would undermine Congress's [deliberate] choice to leave the sentence intact," *id.* at 1331.

Smith does not cite any retroactive changes in the law and *Rutherford* bars consideration of any nonretroactive ones. The case might fairly be read as holding that *any* grounds for compassionate release—whether endorsed by the Sentencing Commission or considered by a district court— "must land within the statutory goalposts, no matter how wide they might be." *Id.* at 1334. The question then arises whether a statutory minimum sentence reflects a deliberate congressional choice to exclude such sentences from eligibility for reductions pursuant to the First Step Act.

Prior to *Rutherford*, the law was clear:

> There is no indication in the statutory text that compassionate release is not available to inmates sentenced to mandatory minimum terms. Instead, § 3582(c)(1)(A) broadly permits a district court to "reduce the term of imprisonment" once certain conditions are met. The broad language in § 3582(c)(1)(A) reflects the intention behind the compassionate release mechanism, which was first introduced in the Sentencing Reform Act of 1984.

*United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022) (citations omitted). Based on this reading of the statutory language, the Second Circuit "explicitly h[e]ld that a mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate release." *Id.*

In contrast to its compassionate relief provision, the First Step Act

specifically directed district courts to retroactively reduce sentences for offenses involving crack cocaine "as if [the reduced mandatory minimums] of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). Although the First Step Act itself further reduced those mandatory minimums, *see id.* § 401(c), Congress expressly limited those additional reductions to "cases where no sentence had been imposed as of [the First Step Act's effective] date." *United States v. Vanhoesen*, 188 F.4th 627, 633 (2d Cir. 2026) (citing Pub L. No. 115-391, § 401(c), 132 Stat. at 5221). "Otherwise, 'for defendants sentenced before the Act, the general rule of nonretroactivity remains in place." *Id.* (quoting *Rutherford*, 146 S. Ct. at 1327).

In the Court's view, *Rutherford* limits reducing a sentence only insofar as Congress has elsewhere made a "deliberate decision *not* to extend newly reduced penalties to those already sentenced." 146 S. Ct. at 1330. The Second Circuit in *Vanhoesen* sensibly found the nonretroactive reductions in the statutory minimum sentences for offenses involving crack cocaine to be such a decision.

By contrast, the First Step Act's compassionate release provision, as interpreted by the Second Circuit in *Halvon*, reflects a deliberate decision *to* exempt defendants who demonstrate "extraordinary and compelling reasons" from the mandatory minimums in effect when they were originally sentenced. Nothing

in *Vanhoesen* or *Rutherford* calls *Halvon* into question. Indeed, two weeks before *Vanhoesen* was decided—and more than two months after *Rutherford* was—the Second Circuit described it as "beyond dispute that a district court is empowered by § 3582(c)(1)(A) to reduce a prison sentence to time served, even if the original sentence included a mandatory minimum term." *United States v. Diaz*, 2026 WL 2293586, at *2 (2d Cir. Aug. 10, 2026) (citing *Halvon*).

Thus, as the Court has recently concluded, *Rutherford* does not remove a district court's discretion to reduce a mandatory minimum sentence. *See United States v. Amuso*, 2026 WL 2969763, at *2 (E.D.N.Y. Oct. 2, 2026). Of course, the Court must still find that extraordinary and compelling reasons—and an updated consideration of the § 3553(a) factors—warrant a reduction. The Court now addresses those requirements.[1]

**B. Other Extraordinary and Compelling Reasons**

Although *Rutherford* invalidated subsection (6) of the Sentencing Commission's policy statement on compassionate release, the balance of § 1B.13 remains an authoritative compendium of the "extraordinary and compelling

[1]Although Smith has shown that his request for compassionate release was denied by the warden at his penitentiary, he has provided no evidence that he administratively appealed the denial. *See* 28 C.F.R. § 542.15 (describing process for appealing warden's decision to BOP Regional Director and General Counsel). The Court's usual practice is not to dwell on the exhaustion requirement when the defendant is not entitled to relief in any event.

reasons" for such relief. None of Smith's proffered reasons crosses that threshold.

The family circumstances described in § 1B1.13(b)(3) generally require that the defendant be the only available caretaker for an incapacitated family member. The death of Smith's mother, while tragic, does not trigger that concern.

A defendant's illness may warrant release under § 1B1.13(b)(1) only when it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Smith's high cholesterol does not meet this standard.

§ 1B1.13 does not consider a defendant's relative youth at the time of his or her crimes. Subsection (2) recognizes that compassionate release may be warranted if "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," but Smith meets only one of those three criteria.

Smith's allusion to the conditions of his confinement apparently refers to the lack of programs available to life inmates. This is not an extraordinary and compelling reason under § 1B1.13. In any event, a motion for compassionate release is not the proper vehicle for litigating conditions-of-confinement issues. *See United States v. Farmer*, 2022 WL 47517, at *3 (S.D.N.Y. Jan. 5, 2022) (holding that "generalized statements about the conditions of confinement do not constitute

compelling reasons for compassionate release").

To these factors, Smith adds evidence of his rehabilitation. By statute, consideration of "rehabilitation...alone" is prohibited, *see United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020) (quoting 28 U.S.C. § 994(t)), but that does not preclude consideration of "rehabilitation plus"— "meaning rehabilitation in conjunction with other appropriate factors." *United States v. Johnson*, 754 F. Supp. 3d 305, 311 (E.D.N.Y. 2024) (internal quotation marks omitted). Here, the factors offered by Smith, even considered collectively, do not reflect a sufficient "plus." Nor, to put it in the terms of the policy statement, are his circumstances "similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B.13(b)(5).

**C. § 3553(a) Factors**

Even if Smith satisfied the gatekeeping requirements of § 1B.13, consideration of the § 3553(a) factors would counsel against his release. The developments in Smith's life since his sentence was imposed simply do not outweigh the need for that sentence to reflect the seriousness of his crimes and the danger his conduct posed to the community. Reducing his sentence now would create unwanted disparities in sentencing and understate the seriousness of his role in a serious criminal enterprise and two murders. In other words, while Smith's sentence was mandated by statute when it was imposed, a full consideration of an up-to-date record satisfies the Court that life plus 20 years remains the appropriate

sentence.

**III**

For the foregoing reasons, Smith's motion for compassionate release is denied. Such a denial is inherently without prejudice, however, and the Court encourages Smith to continue focusing on his commendable rehabilitation efforts.

**SO ORDERED.**

_/S/ Frederic Block___________
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
November 19, 2026